IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-176-FL

| | |
|---|---|
| CAROLYN SAYLON, Representative of Saleh A. Saylon Estate, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | )<br>) |

ORDER

This matter is before the court on defendant's motion to dismiss (DE 35) and plaintiff's motions to amend, motion for judgment on the pleadings, and motion to convert to summary judgment (DE 40, 41, 47). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, defendant's motion is granted in part and denied in part, and plaintiff's motions are denied.

## STATEMENT OF THE CASE

Plaintiff commenced this action pro se on April 28, 2020, by filing a motion to proceed in forma pauperis, with a proposed complaint, asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2680, for medical negligence and intentional torts in the care of her husband, now deceased, at a veterans hospital. Plaintiff identified former-defendants, government employees Carla E. Sturdivant ("Sturdivant") and Chastina Brown ("Brown"), as two nurses involved in care of plaintiff's husband. Plaintiff seeks damages, interest, fees, and costs.

Upon plaintiff's payment of the filing fee, the court directed the clerk to file the complaint on May 26, 2020, and the court stayed the matter for a period of time to allow plaintiff to secure

counsel. The court also directed the clerk to send plaintiff a pro bono letter, and the case subsequently was submitted to the court's pro bono panel. However, no pro bono counsel or other counsel entered an appearance. Upon plaintiff's notice to the court asserting plaintiff's desire to proceed without counsel, the court lifted the stay on July 22, 2020, and allowed plaintiff an extension of time for service.

Defendant filed, on August 17, 2020, a certification of scope of employment and substitution of the United States in place of former defendants Sturdivant and Brown.[1] On December 23, 2020, defendant filed the instant motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded in opposition on January 14, 2021. That same date, plaintiff filed the instant motion for judgment on the pleadings and motion to amend complaint, relying on the following documents: 1) proposed amended complaint, 2) correspondence between plaintiff and the United States Department of Veterans Affairs, Office of General Counsel, 3) a copy of the court's order entered July 22, 2020.

Defendant replied in support of its motion on January 28, 2021, and it filed responses in opposition to plaintiff's motions for judgment on the pleadings and to amend. On February 11, 2021, plaintiff replied in support of her motion to amend and filed a surreply in opposition to defendant's motion. Plaintiff replied in support of her motion for judgment on the pleadings, on February 18, 2021, including the instant motion for summary judgment in which she seeks to convert the motions already filed to ones arising under Federal Rule of Civil Procedure 56.

---

[1] That same date, defendant moved to dismiss for improper service, which the court denied without prejudice, allowing plaintiff an extension of time for service. See Saylon v. United States, No. 5:20-CV-176-FL, 2020 WL 6566850, at *3 (E.D.N.C. Nov. 9, 2020). The court also thereafter allowed defendant an extension of time to file a responsive pleading.

## STATEMENT OF THE FACTS

The facts alleged in the complaint[2] may be summarized as follows. Plaintiff is a resident of Fayetteville, North Carolina, and the wife of Saleh Ahmed Saylon, retired army war veteran, now deceased (hereinafter, "plaintiff's husband"). Former defendants Sturdivant and Brown are nurses at a veterans hospital in Fayetteville, North Carolina (the "veterans hospital").

On October 25, 2016, plaintiff took her husband to the veterans hospital, and had planned to leave him there "for respite" until November 1, 2016. (Compl. at 2). Plaintiff called to check on her husband each day. On October, 30, 2016, when she called to check on her husband, he "sounded really drugged up and told [plaintiff] to come and get him because they were trying to hurt him." (Id.). Plaintiff alleges her husband "sounded really stressed out," so she decided to pick up her husband early, on October 31, 2016. (Id.).

On October 31, 2016, a nurse brought plaintiff's husband out to plaintiff's car and placed him into the car. Plaintiff alleges she "didn't get a chance to check" her husband before leaving the veterans hospital. (Id.). Plaintiff and her husband stopped to get something to eat and continued to their residence. Upon arrival at home, plaintiff's husband told plaintiff he was hot and she took his shirt off. Plaintiff "immediately saw [] scratches on his hands, forearms, and back." (Id. at 3). Also she "noticed his right thumb was swollen and bruised." (Id.).

Plaintiff "got [her] husband dressed and took him immediately to Womack Army Hospital to document the injuries." (Id.). According to the complaint, she also "called the Office of the

---

[2] Hereinafter, all references to the complaint, or to "Compl." in citations, are to the complaint filed May 26, 2020, including its exhibits (DE 7). Several exhibits to the complaint are sealed, where they contain sensitive personal and medical information. The court filed a redacted version of the complaint on July 21, 2020 (DE 16).

Patient Advocate and spoke with the in-take personnel, who told [plaintiff] to make sure that [to] take pictures of the injuries, which [plaintiff] did on October 31, 2016." (Id.). "The intake employee also told [plaintiff] that she would be calling the nurse, [Sturdivant]." (Id.). "The intake personnel at the Office of the Patient Advocate called the [nurse, Sturdivant] on November 2, 2016, and also called [plaintiff]" on that same date. (Id.).

Sturdivant called plaintiff on November 2, 2016, and allowed plaintiff to speak with Brown, who allegedly "attempted to explain what happened to [plaintiff's] husband a week earlier." (Id.). According to the complaint, "Brown told [plaintiff] that [her] husband was kicking and swinging at staff, however, she claimed that [plaintiff's] husband had no scratches on him." (Id.). "Significantly," according to the complaint, her "husband's service-connected rated disability notes that he has lost the use of both feet which clearly contradicts [Brown's] accusation that [her] husband was kicking at staff." (Id.).[3]

Plaintiff alleges that the injuries which Brown and Sturdivant "claimed didn't exist on October 31, [2016], were documented at Womack Army Hospital on October 31, 2016, immediately after" leaving the veterans hospital. (Id.). Plaintiff attaches as Exhibit C to the complaint photographs of her husband, overlayed with handwritten notes, including "scratches on hand," "bruises on back," and "thumb sprain." (DE 7-3 at 2-9). Plaintiff alleges that the photographs show injuries "which were caused by the negligence on the part of [Brown] and [Sturdivant] . . . who clearly [weren't] acting within the scope of their standard care." (Compl. p. 4).

---

[3] Plaintiff attaches as Exhibit E to the complaint medical records of her husband, which include a reference to her husband's "Rated Disabilities," including the statement "loss of use of both feet (100%)." (DE 7-5 at 2).

4

Plaintiff alleges that Sturdivant entered "progress notes" on November 3, 2016, stating that she explained to plaintiff "that there is no documentation noting a skin issue however [plaintiff] can request a copy of what was documented during [her husband's] stay on the CLC through medical records." (Id. p. 3). Plaintiff attaches as Exhibit E to the complaint medical records of her husband, which include the quoted reference. (DE 7-5 at 4). The quoted reference is included within a section of the medical records captioned "NURSING NOTE," including a narrative description of the "veteran's respite stay on the CLC."[4] (DE 7-5 at 3).

Additional progress notes are dated November 2, October 31, October 28, October 27, and October 26, 2016, and are captioned "NURSING NOTE" "RECREATIONAL THERAPY NOTE" "LONG TERM CARE NOTE" "RN NOTE." (Id. at 3-10). There is a handwritten note stating "questionable documentation" over one progress note by defendant Brown dated October 27, 2016, which states "Veteran noted with physical aggression and verbal aggression toward staff using inappropriate language and attempting to swing at and kick at staff." (Id. at 6).

## COURT'S DISCUSSION

A. Defendant's Motion to Dismiss

    1. Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not

---

[4] The medical records do not specify what the acronym "CLC" stands for.

consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

    2.    Analysis

        i.    Rule 9(j) Certification

Defendant argues that plaintiff's complaint must be dismissed because plaintiff does not comply with North Carolina Rule of Civil Procedure 9(j). This argument is foreclosed by a recent opinion by the United States Court of Appeals for the Fourth Circuit, in Pledger v. Lynch, ___ F.4th ___, 2021 WL 3072861 (4th Cir. July 21, 2021).

There, as here, the government moved to dismiss a pro se plaintiff's FTCA medical negligence claim on the basis that the plaintiff did not comply with a state law requirement to serve a "screening certificate of merit" by a health care provider who qualifies as an expert under state law, with an explanation that the "applicable standard of care was breached." Id. at * 4. The court of appeals held that this was not a proper basis for dismissal under federal law pleading standards.

In particular, the court determined that Federal Rule of Civil Procedure 8 only requires a "short and plain statement" of a plaintiff's claim; that Rule 9 requires heightened pleading only for claims alleging fraud of mistake; Rule 12 only requires "sufficient factual matter, accepted as true, to state a claim to relief that is plausible"; and Rule 11 does not require verification or certification except by the attorney or party. Id. * 6. Therefore, the court held that "it is impossible to reconcile certificate requirements" like the West Virginia certification requirement at issue in that case, with the requirements of the Federal Rules. Id. Accordingly, the Federal Rules, and not a state procedural pleading requirements, apply to plaintiff's FTCA claim in federal court. Id. *7.

Although the West Virginia certification requirement is not identical in all respects to the procedural requirements of North Carolina Rule of Civil Procedure 9(j), the reasoning in Pledger necessarily applies in this case. Here, Rule 9(j) provides an additional, heightened, pleading requirement for medical malpractice claims that is not contained in the Federal Rules of Civil Procedure. In addition, Rule 9(j) is a requirement contained in North Carolina procedural rules, and it does not alter the substantive elements of a medical malpractice claim. Thus, like the West Virginia certification requirement, it is not a substantive rule, but rather a procedural rule. See Pledger, ___ F.4th at ___, 2021 WL 3072861 *7.

Defendant, in its briefs filed prior to Pledger, relies upon the unpublished Fourth Circuit opinion in Littlepaige v. United States, 528 Fed. App'x 289 (2013). Littlepaige, however, is in conflict with Pledger, because it accepts, without any discussion, that Rule 9(j) is a "substantive" legal requirement for a medical malpractice claim. Id. at 292. Under the reasoning of Pledger, Rule 9(j) is not a substantive requirement for a medical malpractice claim, but rather a heightened pleading requirement which this court cannot apply in federal court to a FTCA claim. Pledger, ___ F.4th at ___, 2021 WL 3072861 *6. Therefore, Pledger controls, and Littlepaige is no longer persuasive authority.

In sum, that part of defendant's motion to dismiss on the basis of Rule 9(j) must be denied.

    ii.    Statement of Medical Negligence Claim

In the alternative, defendant argues that plaintiff fails to state a claim for medical negligence. "An action under the FTCA may only be maintained if the Government would be liable as an individual under the law of the state where the negligent act occurred." Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009). Accordingly, the court must "apply the substantive law of the state where the alleged tort took place." Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009).

7

Under North Carolina law, the elements of medical negligence are: "(1) the standard of care, (2) breach of the standard of care, (3) proximate causation, and (4) damages." Turner v. Duke Univ., 325 N.C. 152, 162 (1989).

Here, plaintiff alleges sufficient facts to state a claim for medical negligence. She alleges she took her husband to the hospital for respite care for a week. (Compl. at 2). When she called to check on her husband after several days, he "sounded really drugged up" and asked her to come and get him "because they were trying to hurt him." (Id.). After picking him up, plaintiff saw and documented scratches on his hands, forearms, and back, and his right thumb was swollen and bruised, which conditions were new. (Id. at 3). When she talked to the nurses, they claimed her husband was kicking at staff and that he had no scratches; however, according to plaintiff, these claims were contradicted by her husband's loss of use of his feet, and photographs documenting his injuries. (Id.). According to plaintiff, nursing progress notes provided "questionable documentation." (DE 7-5 at 3).

It is plausible to infer from the alleged facts that the nurses had a standard of care not to hurt plaintiff's husband or allow him to injure himself, and to document properly his care. It is also plausible to infer that nurses breached that standard of care, leading to the injuries documented and corresponding damages, and further that the standard of care was breached by insufficient documentation.

Defendant argues that plaintiff does not sufficiently plead proximate cause, pointing out that "the medical records that [plaintiff] submitted in support of the complaint (DE 16-5) negate proximate causation of Mr. Saylon's injuries." (Def's Mem. (DE 36) at 19). Defendant contends that "[t]he multiple references in the records to Mr. Saylon's attempts to get out of bed and walk unassisted and his several bouts of physical aggression, including hitting and kicking, more likely

8

than not, explain the scratches and sprained thumb." (Id.). Plaintiff, however, directly challenges the truth of the statements in the medical records as "questionable documentation," particularly with respect to "kicking." (DE 7-3 at 6; Compl. at 3).

For purposes of defendant's motion to dismiss, the court considers the complaint and all documents attached thereto. See Fed. R. Civ. P. 12(d). However, "[p]laintiffs attach exhibits to their complaints for all sorts of reasons." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016). Concerning a "document . . . prepared by or for the defendant," courts must consider that the document "may reflect the defendant's version of contested events or contain self-serving, exculpatory statements." Id. at 167-168. Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." Id. at 167.

Here, plaintiff does not attach the medical records for the truth of the matters asserted in them. To the contrary, she suggests she disputes the veracity of the nurses' reports and she challenges the sufficiency of their documentation. (DE 7-3 at 6; Compl. at 3). Therefore, contrary, to defendant's assertion, the medical records attached to the complaint do not necessarily negate causation, upon the standard of a motion to dismiss. In so holding, the court expresses no opinion regarding the merits of plaintiff's claim upon a more complete record, only that defendant's argument is not properly advanced upon a motion to dismiss under Rule 12(b)(6).

In sum, that part of defendant's motion seeking to dismiss plaintiff's claim of medical negligence for failure to state a claim is denied.

      iii.     Other Claims Suggested by Complaint

Plaintiff asserts that she has raised claims based upon "intentional harm," (Pl's Opp. (DE 38) at 2), and "physical abuse." (Pl's Mem. (DE 39) at 2). Plaintiff also cites 28 U.S.C. § 2680,

which includes a reference to certain intentional tort claims. The FTCA, however, "preserves the Government's immunity from suit on any claim arising out of battery" or other intentional torts falling within the "intentional tort exception" in the statute. Levin v. United States, 568 U.S. 503, 507 (2013) (quoting 28 U.S.C. § 2680(h)). A plaintiff "cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery." United States v. Shearer, 473 U.S. 52, 55 (1985). Accordingly, plaintiff's claims premised upon intentional harm must be dismissed for failure to state a claim.

Therefore, defendant's motion to dismiss is granted in this part.

B. Plaintiff's Motions

1. Motion to Amend

In plaintiff's motion to amend, plaintiff seeks leave to file an amended complaint adding a third count for "medical malpractice" against defendant, and making no other changes. (DE 40-1 at 4). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). Here, the proposed amendment is redundant where the court has already construed plaintiff's original state as stating a claim for medical negligence. See, e.g., Est. of Savino v. Charlotte-Mecklenburg Hosp. Auth., 375 N.C. 288, 295 (2020). Therefore, plaintiff's motion to amend is denied as futile.

2. Motions for Judgment on Pleadings and to Convert to Summary Judgment

Plaintiff seeks judgment on the pleadings in her favor. However, judgment on the pleadings in plaintiff's favor is premature, where defendant has not yet filed an answer in this case. See Fed. R. Civ. P. 12(c). Therefore, plaintiff's motion for judgment on the pleadings is denied.

10

Case 5:20-cv-00176-FL   Document 48   Filed 07/26/21   Page 10 of 12

Plaintiff's motion to convert to summary judgment also is without merit. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Here, however, the court did not consider matters outside the pleadings in ruling on the instant Rule 12(b)(6) and 12(c) motions. Therefore, there is no basis for converting the instant motion to dismiss to one under Rule 56. Accordingly, plaintiff's motion to convert to summary judgment is denied.

C. Case Scheduling

Where the court has denied in part defendant's Rule 12(b)(6) motion, a responsive pleading now must be served within 14 days of this order. See Fed. R. Civ. P. 12(a)(4).

Defendant requests in its motion that if plaintiff's claim survives its Rule 12(b)(6) motion, "the case should not proceed to discovery until after the court determines [plaintiff] qualifies to represent the estate on this claim and to prosecute the claim without legal counsel." (Def's Mem. (DE 36) at 20). Defendant asks the court to "enter a 30-day stay and direct [plaintiff], within 30-days, to file with the court the information the court requires to determine whether [plaintiff] qualifies to represent the estate as the legally appointed administratrix and whether she qualifies to prosecute the claim without legal counsel (pro se) because she is the sole beneficiary of the estate . . . and there are no creditors of the estate who are eligible to recover from a judgment in this survivorship action." (Id.).

Defendant is correct to note these important preliminary issues in this case, as the court has forecasted previously. See Saylon, 2020 WL 6566850, at *3. However, defendant's request for a stay is premature. Defendant first must file a responsive pleading. Then, if warranted, the court may enter an initial order regarding planning and scheduling, prompting a report from the parties

under Federal Rule of Civil Procedure 26(f). At that juncture, defendant may request a stay or bifurcation of proceedings, if necessary, for adjudication of a preliminary issue regarding plaintiff's ability to proceed pro se with this action.

Accordingly, to the extent defendant seeks a stay of the action at this juncture, defendant's motion in this part is denied without prejudice.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 35) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims based upon intentional torts, under 28 U.S.C. § 2680, are DISMISSED. Plaintiff's claim based upon medical negligence, under 28 U.S.C. § 1346(b), is allowed to proceed. Plaintiff's motion to amend, motion for judgment on the pleadings, and motion for summary judgment (DE 40, 41, 47), are DENIED. Defendant's request for a stay at this juncture is DENIED WITHOUT PREJUDICE, as set forth in more detail herein.

SO ORDERED, this the 26th day of July, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge